[S. F. No. 2101. Department Two.—August 8, 1902.]

## H. WILLIAM JACOBS, Appellant, v. JOHN LUDEMANN, Respondent.

Trust—Security for Indebtedness—Support of Findings—Appeal.— In an action to enforce a trust in land acquired by the defendant at a judicial sale obtained by the plaintiff under an alleged breach of confidence and trust relation, where the evidence shows that there was no breach of confidence or trust, and the court found upon sufficient evidence that substantially all of the allegations of the answer were true, and where the decree rendered accordingly appears to be just and fair to both parties, it will not be disturbed upon appeal of the plaintiff.

Id.—Decree Allowing Time to Make Conveyance.—No material injury was done to the plaintiff by giving to the defendant ten days

in which to make the conveyance and surrender possession of the land, upon payment of the debt, instead of reconveying the property at once upon payment to him of the amount due.

APPEAL from a judgment of the Superior Court of Contra Costa County and from an order denying a new trial. J. P. Jones, Judge.

The facts are stated in the opinion.

Otto Tum Suden, for Appellant.

William Lair Hill, and H. V. Alvarado, for Respondent.

CHIPMAN, C.—Statement of facts: The complaint was filed May 21, 1898. It is alleged that heretofore, in an action brought by this plaintiff in the superior court of Contra Costa County, entitled William Jacobs *v.* Robert F. Simpson and Thomas J. Fallon, judgment was duly given and made against the defendants therein, adjudging that the land, the subject of the present action, be sold pursuant to the decree of said court, for the purpose of realizing a certain sum of money due said plaintiff in that action from defendants therein; that thereafter the said land was sold as provided by law in such cases; that at the time of said sale plaintiff herein was aged seventy-nine years, without a family, and at that time he was acquainted with defendant herein; that defendant pretended to take great interest in plaintiff and his affairs; was a fellow-countryman of plaintiff, and assured him that he would look after his affairs and that plaintiff might repose implicit confidence in him; that, trusting defendant's assurances, plaintiff did place confidence in him; that when said land was offered for sale by the commissioner under said decree defendant represented to plaintiff that he (plaintiff) was not authorized by law to bid upon said property nor to purchase it at such sale, but that he (defendant) would procure some one else to bid and purchase the property for him, and thereupon defendant offered to and did bid in and purchase said land for plaintiff and hold the same for plaintiff, and after the issuance of the commissioner's deed would convey the land so purchased to plaintiff; that plaintiff, reposing confidence in defendant and believing his representa-

tions to be true, and being himself aged and infirm in body, did then and there permit defendant to become, and he did become, the purchaser at said sale for the sum of two thousand dollars, and a certificate of sale was issued to defendant and later a commissioner's deed; that defendant paid no money for said purchase, and plaintiff paid the costs and expenses of sale; that in January, 1898, plaintiff was taken sick, and so continued for several months, and was unable to help himself, during all which time he resided at defendant's "rooming-house, kept and maintained by the latter at the city of Oakland," at the invitation of defendant, who pretended to be his friend. It is alleged that while plaintiff was "so lying sick at said hotel of the said defendant, unable to help himself, and feeble in mind as well as in body," defendant procured plaintiff to assign to defendant his (plaintiff's) deposit account with the San Francisco Savings Union; and also plaintiff is informed and "indistinctly remembers" that defendant caused him to sign a paper writing acknowledging that said land belonged to defendant, and alleges that if such paper is in existence it was procured by fraud, deception, and undue influence, and while plaintiff was unable to comprehend the nature of any such document; that defendant now pretends and gives out that he is the exclusive owner of said land, and that plaintiff has no interest therein, whereas the truth is, that plaintiff is the owner, and "the same was but held in trust, as hereinabove mentioned," by defendant for plaintiff. Judgment is prayed that defendant set forth what right or title he has or claims in said land; that it be adjudged that any document which plaintiff may have signed while sick and feeble in body and mind be declared null and void; that it be decreed that defendant holds said land in trust for plaintiff; and that he be directed to convey the title to plaintiff.

The court made the following findings of facts:—

Plaintiff and defendant became acquainted in February, 1894, when plaintiff came to defendant's hotel and stated to defendant that he (plaintiff) had been defrauded of his home by Simpson and Fallon; that his relatives had refused to help him, and that he had no friends, unless defendant would befriend him and look after his interests; that he besought defendant to take care of him and look after his interests and procure for him an attorney and help him to recover his

home from Simpson and Fallon; that plaintiff was an aged
man, feeble and suffering much of the time from bodily ail-
ments, and in need of some person to take care of his affairs;
"defendant was thereby moved to take an interest in him and
his affairs, and did promise to look after him and his affairs,"
and to look after and care for him and assist him in recover-
ing his said home; defendant received plaintiff into his hotel
at said time and ever after until May 18, 1898, "continuously
and all the time gave the plaintiff a home and all the comforts
of a home in said hotel and with defendant's family," and
during all said time cared for him, nursing him in sickness,
and treated plaintiff as a guest of said hotel; shortly after
plaintiff came to defendant's hotel defendant procured for
him an attorney, Mr. William L. Hill, of the firm of Davis
& Hill, and with the aid of said counsel took the necessary
steps to recover plaintiff's interests in his said home.   An
action was commenced in this said court, and after a pro-
tracted defense in said action plaintiff recovered judgment,
and the sale of said land mentioned in the complaint was the
result of that litigation.   Defendant rendered much service
to plaintiff in and about said litigation, with plaintiff's
approval, and spent much time and money in securing evi-
dence and procuring the attendance of witnesses, and himself
attending as an assistant to plaintiff in the litigation; that
from the time plaintiff came to defendant's hotel and until
the order of sale of said land, as alleged in the complaint, there
was no specific contract between plaintiff and defendant with
regard to the amount of compensation defendant was to receive
for his said services, except that plaintiff "repeatedly assured
defendant from the first that defendant should have just
compensation.  . . . At the time said order of sale was made
plaintiff was indebted to defendant in a large sum of money
for his board and living and nursing at defendant's hotel,
and for services rendered and money expended by defendant
in assisting plaintiff, and said indebtedness was still increas-
ing, and in consideration thereof plaintiff suggested and
proposed to defendant that defendant bid for and purchase
said land at said sale, and take and hold the deed therefor and
the possession thereof as security for said indebtedness, ac-
crued and accruing as aforesaid, and as security for such
additional expenses as defendant might necessarily incur in

and about the premises and in and about the care and management thereof''; that ''it was then and there agreed between plaintiff and defendant that defendant should bid for and purchase said land for the sum of two thousand dollars, which amount should be credited on the judgment against Simpson and Fallon, and take possession of and hold the same as security for said indebtedness and expenses. In accordance with said agreement defendant purchased said land, with plaintiff's knowledge and in his presence, and did receive and record the commissioner's deed therefor, and did enter into possession of said land, and now holds possession thereof as security for said indebtedness and expenses. Defendant did not pay the amount so bid, and plaintiff gave a receipt to the commissioners as for money paid on said judgment, and plaintiff paid the costs and expenses of said sale. In December, 1897, plaintiff being in need of money and being unable to attend to his own wants, requested defendant to draw money from the bank for his use, and thereupon signed and handed to defendant a writing directing the transfer of his account into the name of defendant; said account was transferred solely for plaintiff's convenience, and while so transferred, and at plaintiff's request, defendant drew one hundred and twenty-five dollars and no more, and thereafter, at plaintiff's request, defendant retransferred the account to plaintiff, and no other transfer was ever made; that it is not true that defendant caused plaintiff to sign a paper admitting that said land belonged to defendant, and no such paper was ever signed by plaintiff. Defendant never pretended to own the land; plaintiff is the lawful owner, ''and is entitled to have the same conveyed to him upon the payment of the indebtedness due from plaintiff to defendant, and which indebtedness is secured by said land; and defendant does not hold the said land upon any trust other than that hereinabove stated.'' The court finds that on February 21, 1899, the day on which the testimony closed, the plaintiff was indebted to defendant in the sum of eight hundred dollars ''over all payments and credits.'' As conclusions of law, the court found that plaintiff is indebted to defendant in the sum of eight hundred dollars, with legal interest from February 21, 1899, and that defendant holds the legal title to and possession of the land as security for the payment of said indebtedness; that plaintiff will be

entitled to have said land conveyed to him by defendant and possession surrendered "within ten days after the plaintiff shall have paid to defendant said sum of eight hundred dollars and interest, as aforesaid, and the costs of this action"; if defendant fails to so convey, upon payment made to him as aforesaid, "that then the clerk of this court make such conveyance for and on behalf of defendant." Judgment was entered accordingly, from which and from the order denying his motion for a new trial plaintiff appeals. Other facts appear in the opinion.

This is an action to compel defendant to convey to plaintiff certain land, title to which, it is alleged, defendant holds in trust for plaintiff. Defendant admits that plaintiff is the owner, but avers that he (defendant) holds the title by agreement with plaintiff to secure the indebtedness of plaintiff to defendant.

Substantially all the facts alleged in the answer describing the relations of the parties, the conduct and acts of defendant in managing the affairs of plaintiff and looking after his personal care and comfort, the circumstances under which defendant became the purchaser of the land in question at plaintiff's request, and solely to afford defendant a security for the indebtedness of plaintiff to defendant, as well as other facts alleged in the answer, are found by the court to be true.

Appellant contends that the findings are not supported by the evidence. A careful examination of the record satisfies us that there is ample proof to support the findings upon all material issues in the case.

The evidence is sufficient to show that plaintiff came to defendant's hotel in 1894, in a condition requiring not only personal attention, but his business affairs demanded the direction of some one better able than himself to look after them; that it was by plaintiff's request that defendant undertook not only to look after plaintiff's physical welfare, but his business interests as well; that defendant prudently placed the litigation necessary to vindicate plaintiff's rights in the hands of an attorney who brought it to a successful conclusion; that in enforcing the judgment by a sale of land, which became the subject of this action, it was at plaintiff's request that the property was bid in by defendant and the deed made to him, and the purpose, as found by the court, was that

defendant should hold the title for plaintiff to secure defendant the accrued and accruing indebtedness of plaintiff to him. Prior to the sale of the land and conveyance to defendant there was no trust relation and no occasion for any such relation. The transfer by plaintiff of his account with the Savings Union to defendant was at plaintiff's suggestion, for the better convenience of drawing money as needed in the pending litigation, as testified by defendant, and the account was retransferred at plaintiff's request after one hundred and twenty-five dollars had been drawn out. There is nothing in the case to show that defendant was endeavoring to overreach plaintiff in the matter of the bank account or subsequently as to the land. Defendant was able to satisfactorily show to the court his receipts and disbursements in managing the land and the reasonable value of plaintiff's board and lodging was shown to be seventy-five cents per day. After allowing all credit and offsets, the court found on sufficient evidence the balance due defendant at the date mentioned in the findings.

Plaintiff contends that the finding of this balance is but a conclusion of law, and that the court should have found the items—debit and credit—so as to show the figures from which the conclusion was deduced. It was not necessary for the court to do this. The ultimate fact was the amount, if anything, due from plaintiff to defendant, and this was ascertained and found from the evidence submitted to the court.

Appellant further contends that the judgment should be reversed because there is no finding "concerning the effect and operation of the confidential relations existing between the parties as they are alleged in the complaint, and whether or not appellant's mental and physical weakness was taken advantage of."

No fraud, deception, or undue influence of defendant is alleged except in connection with the allegation, made on the "indistinct recollection" of plaintiff, that defendant procured plaintiff to execute a paper writing acknowledging defendant's ownership of the land. There was not the slightest evidence that such a paper was ever signed by plaintiff or claimed by defendant to have any existence, and the court so found. The findings in other respects are as comprehensive as the allegations of the complaint.

There is no allegation in the complaint that plaintiff was at any time mentally incompetent or that his physical and mental weakness made him incapable of understanding fully the nature of the business he had intrusted to defendant and the effect of the agreement he made with defendant respecting the land. We cannot regard the case as one of a trustee dealing with a *cestui que trust* in respect of trust property, as ordinarily understood, or as contemplated in the sections of the Civil Code relied on by appellant. Plaintiff had a judgment against Simpson and Fallon, and to enforce collection their land was sold, plaintiff applying the price bid on his judgment, and by agreement with defendant directed the commissioner's deed to be made to defendant to secure him the debt owing by plaintiff to defendant. Defendant held the title and possession much as would a grantee under a trust deed with right of possession. There was a certain trust relation, as there is in all species of agency, and defendant was bound to account to plaintiff for the rents, issues, and profits of the land held by him as security; he never claimed the property to be his absolutely, and never disputed plaintiff's right to the land on payment of his indebtedness.

Appellant, proceeding from the admitted relations of friendship and confidence, contends that "where, under such circumstances, a party acquires an advantage over the other, the advantage so obtained is presumptively acquired by undue influence and fraud, and the burden is on the party who acquires the advantage to disprove the presumption." The rule is stated with accuracy in section 2235 of the Civil Code. As we have seen, there was no sort of trust relation up to the sale of the land; prior to that time the relation was that of mutual friendship and debtor and creditor. And there is no allegation that "during the existence of the trust"—i. e., after the commissioner's deed to defendant—there were any transactions between the trustee and beneficiary with respect to the trust property. There is no evidence that defendant obtained any advantage over his beneficiary during the existence of the trust or at any other time, and no such presumption as plaintiff invokes could arise; and if any presumption could be indulged that defendant was guilty of fraud or exercised an undue influence over plaintiff, it is rebutted by the evidence in the case.

So far as we are able to judge from the facts disclosed, the decision of the court was just and fair to both parties and warranted by the evidence. There was perhaps no reason why defendant should not make a deed reconveying the property at once upon payment to him of the amount due, but we cannot see that material injury was done to plaintiff by giving defendant ten days in which to make the conveyance and surrender possession of the land.

It is advised that the judgment and order be affirmed.

Cooper, C., and Gray, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFarland, J., Temple, J., Henshaw, J.