[Civ. No. 2644. First Appellate District, Division One.—December 19, 1919.]

ALBERT E. TOWER, Appellant, v. MABEL C. WILSON, Administratrix, etc., et al., Respondents.

[1] EVIDENCE—WEIGHT OF—CONFLICT—PROVINCE OF TRIAL COURT.—If there are discrepancies, inconsistencies, and improbabilities in the evidence, these are matters for the trial court to pass upon in connection with its consideration of the entire testimony in the case. An appellate court will not disturb findings based upon evidence wherein there is a substantial conflict.

[2] PLEADING — ACTION FOR MONEY HAD AND RECEIVED — SECRET PROFITS—SEVERAL COUNTS—CONSTRUCTION OF—FRAUD.—Where, in an action to recover the difference between the sum plaintiff paid for a one-half interest in certain mining property and one-half of the amount alleged to have been the actual price paid for said property by defendant, which amount is claimed to constitute a secret profit made by defendant while acting as the confidential agent of plaintiff, the plaintiff first states his cause of action as a *quantum meruit* for money had and received and then, in a second count, sets forth the probative facts relied upon to support the cause of action, but there is no allegation in such second count that plaintiff was damaged by the acts of defendant, thus specifically pleaded, or that the property is of less value than plaintiff paid for it, the court cannot regard the second count as stating a cause of action for damages for fraud.

[3] ID.—SUFFICIENCY OF FINDINGS.—It is not necessary that the findings of the court on material issues shall follow the pleadings. If the truth or falsity of each material allegation not admitted can be demonstrated from the findings, the requirements of the code relating to such matters are met.

[4] ID.—AFFIRMATIVE ALLEGATIONS IN ANSWER—NECESSITY FOR FINDINGS.—Where certain affirmative allegations in the answer follow and their effect is but to emphasize the denials of the answer, the answer being sufficient without such affirmative allegations, it is not necessary that there should be specific findings on such allegations.

[5] ID.—CONSTRUCTION OF FINDINGS—INFERENCES—PRESUMPTIONS.— Findings must receive such construction as will uphold, rather than defeat, the judgment predicated thereon; and whenever from facts found other facts may be inferred which will support the

1. Presumption as to making and sufficiency of findings in support of judgment, note, 7 Ann. Cas. 380.

judgment of the trial court, such inference will be deemed to have been made by the trial court.

[6] ID.—ACTION FOR MONEY HAD AND RECEIVED—FAILURE TO FIND ON PROBATIVE FACTS — CONSTRUCTION OF GENERAL FINDING. — In this action, in substance one simply for money had and received, the court found that defendant was not indebted to plaintiff in the amount alleged, or any other sum, its failure to find from the evidence the affirmative probative facts pleaded by plaintiff and by him deemed essential to a recovery, as well its construction of the findings which it had made, by rendering judgment in favor of the defendants, must be regarded as its conclusion that the evidence was insufficient to justify such findings as would authorize a decision in favor of the plaintiff.

[7] ID.—FAILURE TO MAKE COMPLETE FINDINGS—WHEN NOT GROUND FOR REVERSAL.—Where, from the evidence in the record, from the judgment ordered, and from the facts found, it is evident that·if more complete findings had been made by the trial court they would have been adverse to plaintiff, the failure of the trial court to make such findings is not a ground for the reversal of the judgment.

[8] VENDOR AND VENDEE—FIDUCIARY RELATIONSHIP—SALE OF MINE— NECESSITY FOR DISCLOSING PROFITS.—Where plaintiff and defendant stood on equal terms, and neither owed the other any special duty of a fiduciary nature, it was no breach of faith for defendant to sell plaintiff a one-half interest in the mining property for a sum fixed by the latter, no matter what it may have originally cost, provided there was no fraud or deceit in the matter; and, under such circumstances, defendant was not bound to, disclose to plaintiff the profit which he was making in the transaction.

[9] PLEADING—REFUSAL OF LEAVE TO AMEND—WANT OF ERROR.—At the conclusion of the trial, and after the court had announced its views as to how the case should be decided, it was not error for the court to refuse the plaintiff leave to amend his third amended complaint by adding thereto a third count, which he styled a "further, separate, and distinct cause of action," where the matters set forth in the proposed amendment was not only inconsistent with the averments of the original complaint, as finally amended, and with the testimony of the plaintiff given at the trial, but raised new and distinct issues, requiring an answer from the defendant, and which could have been asserted under the first cause of action of the original complaint.

[10] ID. — ACTION FOR MONEY HAD AND RECEIVED — COUNTERCLAIM FOR MONEYS ADVANCED CORPORATION—STOCKHOLDER'S LIABILITY.—In this action to recover the difference between the sum plaintiff paid for a one-half interest in certain mining property and one-half of the amount alleged to have been the actual price paid for said property by defendant, which property, subsequent to the

transaction, had been conveyed to a corporation organized to operate it, the stock issued in consideration therefor having been divided between plaintiff and defendant, the court properly permitted the interposition of a counterclaim against plaintiff based on his stockholder's liability for money advanced by defendant to the corporation, pursuant to the original agreement under which the property was purchased, for use in working and developing the property.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco. J. M. Seawell, Judge. Affirmed.

The facts are stated in the opinion of the court.

Sullivan & Sullivan and Theo. J. Roche, A. L. Shinn and U. S. Webb, for Appellant.

Robert B. Gaylord and Morrison, Dunne & Brobeck, for Respondents.

WASTE, P. J.—This is an action brought to recover the sum of $148,750, the difference between the sum of one hundred and seventy-five thousand dollars plaintiff paid for a one-half interest in certain mining property, and one-half of the amount alleged to have been the actual price of the same, and claimed to be a secret profit, made by J. C. Wilson, confidential agent of plaintiff, in the purchase of a mine to be operated as a joint adventure. After the trial, and before judgment, defendant John C. Wilson was duly adjudged a bankrupt, and F. J. Solinsky, as trustee of said bankrupt, was permitted to intervene in the action. Wilson thereafter died, and Mabel C. Wilson, administratrix of his last will and testament, was substituted as defendant in the action in the place and stead of her deceased husband. Judgment was thereafter entered that plaintiff take nothing by the action, and that F. J. Solinsky, as such trustee, have and recover from plaintiff upon a counterclaim, based upon a stockholder's liability, established to the satisfaction of the court, the sum of $32,718.57, together with interest and costs. From this judgment plaintiff appeals.

The original complaint filed in the action was in *assumpsit* to recover the sum of one hundred and forty-two thousand five hundred dollars, money had and received by said John C. Wilson, for the use and benefit of plaintiff. Prior

to the trial plaintiff filed his third amended complaint, containing two causes of action. The first count, following the original complaint, is in *assumpsit*, to recover the sum of $148,750, together with interest, for and on account of money had and received. In the second count it is alleged that during the month of February, 1909, said John C. Wilson was employed by plaintiff as, and became, his general agent and broker; that Wilson, as such agent and broker of plaintiff, transacted a large amount of business for plaintiff, buying and selling shares of capital stock of various corporations listed upon the New York stock exchange; that the relations existing between plaintiff and Wilson were close, intimate, and confidential, and that at all of said times plaintiff had and reposed in him great trust and confidence, and acted and relied upon his advice without seeking, or obtaining, any independent counsel; that, during the month of November, 1909, Wilson represented to plaintiff that there was a valuable mine, located in Mariposa County, for sale, and which could be purchased for three hundred and fifty thousand dollars; that Wilson proposed and advised that plaintiff and he purchase said mine for their joint use and benefit, for the said sum, each to pay one-half of the purchase price, the mine, when bought, to be conveyed to a corporation, to be organized, the capital stock of which would be equally divided between plaintiff and Wilson; that plaintiff, believing in, and relying upon, the said representations made by Wilson, and having confidence in him, made no independent investigation for the purpose of ascertaining the truth, or falsity, thereof, agreed to the said proposal; that the representations were false and untrue, and so known to defendant Wilson in that he knew said mine could be purchased by him for a sum not exceeding the sum of sixty thousand dollars; that plaintiff paid defendant the sum of one hundred and seventy-five thousand dollars, one-half of the alleged purchase price of the said mine, to enable Wilson to purchase the mine after adding thereto a like amount; that Wilson thereupon purchased the mine, paying therefor the sum of fifty-two thousand five hundred dollars only, which sum he paid out of the one hundred and seventy-five thousand dollars paid by the plaintiff, and no part of the purchase price of the mine was actually paid by Wilson.

Upon the trial, by leave of the court, amendments to the third amended complaint were filed by plaintiff, in which it is alleged that at the time the representations were made, and thereafter Wilson concealed from plaintiff the fact that the said property could have been purchased for the sum of fifty-two thousand five hundred dollars. The amendment also sets forth that it was not until June 1, 1912, when he learned that Wilson had purchased the property for less than three hundred and fifty thousand dollars. In the answer filed by Wilson, all material averments contained therein were specifically denied. As an affirmative defense it was alleged that Wilson was the holder of a duly executed and recorded agreement for the purchase of the mine, in possession of the property, developing and working the same; that prior to the first day of December, 1909, he had expended large sums of money in development of the mine, which, "as defendant believed," was of the value of three hundred and fifty thousand dollars and upward; that he offered to sell plaintiff one-half interest in the mine for the sum of one hundred and seventy-five thousand dollars, and was informed, and believed, that plaintiff had made his own investigation of the value of the mine, and as to the desirability of his purchasing a one-half interest therein; that he, Wilson, made no representations to plaintiff which were not wholly true, and which he did not himself believe to be true; that he informed plaintiff of the existence of his option to purchase the mine, and that plaintiff, being fully advised, "Voluntarily accepted defendant's proposition."

By way of counterclaim against plaintiff, Wilson also alleged the incorporation of the Oro Rico Mines Company, the issuance of 1,500,025 shares, the ownership of 750,005 shares by plaintiff; that said corporation became indebted to Wilson in the sum of $90,059.61 of moneys theretofore expended for the use and benefit of the corporation, no part of which had been paid; and that by reason of plaintiff's stockholder's liability, he was indebted to Wilson in the sum of $45,429.34.

The uncontradicted facts are that defendant was engaged in the general stock and bond business in San Francisco. Acting as his manager, and in charge of his business, was B. A. Wilbrand, who had full authority from defendant Wilson to deal with the patrons and clients of the brokerage

business to the same extent as his principal. Plaintiff, before coming to San Francisco, was president of a corporation engaged in the business of mining iron ore, connected with another company engaged in extracting the ore from the mine just referred to, and with a railroad related to the other two corporations. Prior to leaving New York, he appears to have dealt extensively in securities listed on the New York stock exchange. He came to San Francisco with a letter of introduction, from an eastern stock-broking firm, to Wilson, which he presented to Wilbrand soon after his arrival. Shortly thereafter he met Wilson, and took up the matter of investment in stocks, becoming a constant visitor at Wilson's office, where he was in frequent consultation with Wilson and Wilbrand, being supplied with special information by them. Within a short time he opened an account with Wilson. Plaintiff's relations with Wilson gradually became more friendly, and, within a short time, he did all his business, soon amounting to a large sum, with Wilson's office directly. Wilson bought and sold stocks and securities, and in the grain market, being limited only by the condition of Tower's general account, basing his dealings upon his own judgment, and without advice from plaintiff.

Further undisputed facts are that Wilson was the owner of an agreement, or option, duly recorded in Mariposa County, where the property was located, for the purchase of a mine from A. H. Ward, for the sum of sixty thousand dollars, with the right to enter upon and develop the property, which he had done. It consisted of some nine claims on the "Mother Lode." He had paid nothing for the option, but had loaned the owner of the mine two thousand five hundred dollars, evidenced by a promissory note, and secured by a mortgage covering an undivided three-quarters interest in the property. As the final outcome of the deal between the plaintiff and Wilson, in December of 1909, plaintiff signed, and delivered to Wilson, his promissory note for one hundred and seventy-five thousand dollars. Wilson and wife thereupon executed to plaintiff a deed for an undivided one-half of the mining property. Wilson transferred, from plaintiff's account with himself, the sum of twenty-five thousand dollars, which he credited on the note. He paid Ward twenty-five thousand dollars in cash, returned to him the note for two thousand five hundred dollars, and gave him his

own note for twenty-five thousand dollars, making in all a payment of fifty-two thousand five hundred dollars, the total amount paid, in consideration for which Wilson received a deed to the mining claims. In April following, a corporation, the Oro Rico Mines Company, of which plaintiff was one of the incorporators, and of which he became president, was formed to take over the property. Of its two million shares of capital stock, a certificate for one million five hundred thousand shares was issued to Wilson, the consideration being the title to the mining property, which Wilson thereupon conveyed to the corporation. This certificate was canceled and two certificates in lieu thereof were issued,—one for seven hundred and fifty thousand shares was delivered to plaintiff, and one for a like number to Wilson. The corporation took over the operation of the mining property theretofore carried on by Wilson. He had already advanced $7,446.36 in that work, which the company agreed to repay. Both plaintiff and Wilson thereafter advanced large sums to the corporation, to enable it to carry on the mine. The excess of the amount advanced by Wilson for that purpose, over the sum contributed by plaintiff, formed the basis of the counterclaim set up by Wilson in this action, on which the judgment was granted to his trustee in bankruptcy.

The details of the transaction, which culminated in the execution and delivery of the note for one hundred and seventy-five thousand dollars to Wilson, are sharply conflicting. According to the testimony of the plaintiff, in November, 1909, Wilson broached the project and informed him that he knew where they "could get" a mine, located in Mariposa County, out of which, if they could get it, they could make a lot of money; that "they would go half and half," the sum of one hundred and seventy-five thousand dollars to be contributed by each. Plaintiff suggested the price was large, whereupon Wilson explained that he could take his time in paying for it, and that if plaintiff would go in on the deal, he, Wilson, would furnish the money and finance it for the running of the mine. He referred to certain securities owned by plaintiff on which he could realize a profit and pay for the mine. He did not tell plaintiff at any time that he had an option on the property, or that he had any interest therein. Plaintiff was having

45 Cal. App.—9

domestic troubles, and did not wish to own real property. Wilson suggested that a corporation be formed, and the mine be conveyed to it, each to own one-half of the stock. Plaintiff, so he further testified, made no independent investigation, or inquiry, concerning any matter connected with the deal. He had confidence in Wilson, trusted him in all matters of business, believed his statements concerning the mine, and relied wholly upon the representations made by him, believing them to be true. He finally decided to accept the offer, and told Wilson "to go ahead." He did not search the title to the property, or examine any abstract, until two and a half years later, just before the present action was begun. He claims to have had no knowledge of the Ward option, or of the price paid by Wilson for the mine until about that time.

According to the testimony of Wilson, corroborated in part by his manager, Wilbrand, it was plaintiff who opened the negotiations relative to the purchase of the mine, stating that Wilbrand had told him about it. After going into the matter thoroughly, plaintiff asked, "What is the proposition?" Wilson offered to sell him a one-half interest in the property for one hundred and seventy-five thousand dollars. Wilson's further testimony is, that on plaintiff's saying, "You are making an awful lot of money out of this," he told Tower that he thought the property was worth five hundred thousand dollars. "I believed it was the big thing at that time," he testified, "and I believed that Mr. Tower was going to make a great deal of money out of it. I told him that if he went into the mine with me and bought that property, and developed the property, both of us would make a great deal of money." Wilson further testified that he fully explained all the details of the matter to plaintiff, including his option, and told him he was already in possession of and developing the property, giving the name of the mining engineer in charge, and also referring plaintiff to others for information. He denied ever stating that the mine could be purchased for three hundred and fifty thousand dollars, but claimed that the offer was always to "sell" a half interest in it for one hundred and seventy-five thousand dollars. Wilson also testified that diagrams, tabulated statements, indicating the interest of Ward in the mine, were produced by him and examined by plaintiff. According to his tes-

timony, also, when the organization meeting of the Oro Rico Mines Company was held, the plaintiff was present. The Ward option, an abstract of the property, the deeds from Ward to Wilson, Wilson to Tower, Tower to Wilson, and Wilson and wife to the mining company were all produced and commented upon by the attorney conducting the meeting. That plaintiff had knowledge of the option is borne out by the evidence of Wilson's manager, Wilbrand, who testified that he informed Tower of all the details of the matter, including the price at which Wilson could purchase the mine. In passing, it may be said, the trial court did not appear to have put very much reliance upon this witness' testimony.

Much of appellant's argument rests upon the assumption that the facts were as contended for by him, and that it was error for the trial court to find otherwise. This court is not in position to now determine that question. Without going into detailed discussion of many matters appearing in the record, which no doubt appealed to the trial court with persuasive force, suffice it to say that the very brief epitome of the long record, we have included in our statement of the facts, presents, in the main, the conflicting testimony of the parties in relation to the real matter at issue. [1] If there are discrepancies, inconsistencies, and improbabilities in the evidence, these were matters for the trial court to pass upon in connection with its consideration of the entire testimony in the case. (*Blanc* v. *Connor,* 167 Cal. 719, 723, [141 Pac. 217].) An appellate court will not disturb findings based upon evidence wherein, as here, there is a substantial conflict. (*Reynolds* v. *Jackson,* 25 Cal. App. 490, [144 Pac. 305]; *Ryder* v. *Bamberger,* 172 Cal. 791, 799, [158 Pac. 753].) As the trial court accepted Wilson's testimony as the correct statement of the issue, the findings are consistent with the facts, and find ample support in the evidence.

[2] A further contention of the appellant is that the court failed to make its findings upon material issues. The plaintiff first states his cause of action as a *quantum meruit,* the specific allegation being that Wilson "was indebted to plaintiff . . . for and on account of so much money had and received . . . for the use and benefit of plaintiff." The second count, as shown in our former reference to it, is nothing more than a specific rehearsal of the probative facts

relied upon to support the cause of action. Appellant so states in his opening brief. There is no allegation that plaintiff has been in any way damaged by these acts. If the interest in the mining property sold to plaintiff by Wilson be of less value than plaintiff paid for it, the fact is not stated. We are not permitted, therefore, to regard the second cause of action as one of damages for fraud. (*Holton* v. *Noble,* 83 Cal. 7, 8, [23 Pac. 58]; *Wainwright* v. *Weske,* 82 Cal. 193, 196, [23 Pac. 12].) Plaintiff is seeking a return of the money he claims Wilson unlawfully obtained from him. His second cause of action seems to rest upon the implied contract upon the part of Wilson to repay the difference between the one hundred and seventy-five thousand dollars received by him, and one-half of the amount he paid Ward as the purchase price of the mine, which sum he is alleged to have inequitably received, and a demand for the return of which, plaintiff avers, has been made and refused. It comes squarely within the definition of an action for money had and received. (*London etc. Fire Ins. Co.* v. *Liebes,* 105 Cal. 203, 207, [38 Pac. 691].) It is obvious, we think, that these counts relate to the same matter, and are an attempt to declare upon an alleged liability growing out of the same transaction. We are, therefore, of the opinion that the findings are sufficient, and, when properly construed, will be found to dispose of every material issue in the case.

[3] It is not necessary that the findings of the court on material issues shall follow the pleadings. If the findings, taken together, are such that the court can say the ultimate facts necessarily result therefrom, they are sufficient. If the truth or falsity of each material allegation not admitted can be demonstrated from the findings, the requirements of the code relating to such matters are met. (*Millard* v. *Legion of Honor,* 81 Cal. 340, 342, [22 Pac. 864]; *Mott* v. *Ewing,* 90 Cal. 231, 235, [27 Pac. 194].) In another case in which "the cause of action was single, but was stated in different forms in the complaint: First, for money loaned; second, for money had and received; and the third count set out a contract in writing," what was done under it, and an agreement "to repay to plaintiff all moneys he had paid or advanced under said contract," the supreme court said: "Appellant specifies that the issues under the first and sec-

ond counts were not found by the court. These counts were upon the same cause of action as the third, and it so appeared upon the face of the complaint. As they rested upon the same facts, the facts found include them." (*Haines* v. *Stilwell*, 5 Cal. Unrep. 27, 30, [40 Pac. 332]. See, also, *Leeke* v. *Hancock*, 76 Cal. 127, 130, [17 Pac. 937].)

Appellant particularly complains that the court failed to specifically find upon the issues of confidential relationship between Tower and Wilson, the volume and character of the business transacted by Wilson as Tower's agent, the confidence and trust reposed in Wilson by Tower, his acting without seeking independent advice, his failing to make an investigation as to the proposed mining venture, and as to the alleged concealment and suppression of facts relating to the actual purchase of the mine from Ward. [4] He complains also that the court did not find specifically upon certain affirmative allegations of the answer. Those allegations followed and their effect was but to emphasize the denials of the answer. The answer was sufficient without the affirmative matter. It was not necessary that there should be specific findings on such allegations. (*Needham* v. *Chandler*, 8 Cal. App. 124, 127, [96 Pac. 325]; *Murphy* v. *Bennett*, 68 Cal. 528, 531, [9 Pac. 738].) The trial court did find, however, that Wilson was "not indebted to plaintiff in the sum of $148,750, or any other sum, for or on account of so much money had or received . . . from plaintiff for the use, or benefit, of plaintiff, or at all." This was a finding upon the ultimate fact, the amount, if anything, due from defendant to plaintiff (*Jacobs* v. *Ludemann*, 137 Cal. 176, 182, [69 Pac. 965]), and, we think, necessarily included the whole controversy. (*Southern California Ry. Co.* v. *Slauson*, 6 Cal. Unrep. 874, 876, [68 Pac. 107]. See, also, *Jessen* v. *Peterson, Nelson & Co.*, 18 Cal. App. 349, 352, [123 Pac. 219].) [5] It must receive such construction as will uphold rather than defeat the judgment predicated thereon. Whenever, from facts found, other facts may be inferred which will support the judgment, such inference will be deemed to have been made by the trial court. [6] Its failure to find from the evidence the facts deemed by appellant to be essential to a recovery by him, as well as its own construction of the findings which it had made, by rendering judgment in favor of the defendants, must be regarded as its own conclusion that the evidence was insufficient

to justify such findings as would authorize a decision in favor of plaintiff. (*Breeze* v. *Brooks,* 97 Cal. 72, 77, [22 L. R. A. 257, 31 Pac. 742]; *Lomita L. & W. Co.* v. *Robinson,* 154 Cal. 36, 40, [18 L. R. A. (N. S.) 1106, 97 Pac. 10].) In other words, the court having found the ultimate fact in favor of the defendants, in effect finds and concludes that the *contra* probative facts alleged by plaintiff are untrue. In addition to the finding quoted, the court did find with great particularity that the transaction between plaintiff and Wilson was not as alleged, and testified to by plaintiff. The findings also recite that Wilson did not represent that there was a mine which could be purchased for three hundred and fifty thousand dollars, or any sum, and never proposed to Tower that they two acquire the property for their joint use or benefit, or that each should pay one-half of the purchase price, the mine when acquired to be conveyed to a corporation and operated by them jointly through the company. The court also found specifically that Wilson paid the whole of the purchase price of the mine with his own money, and upon his purchase of the same on his own account. [7] From the evidence in the record, from the judgment ordered, and from the facts found, it is evident that if more complete findings had been made, they would have been adverse to appellant. In such case the failure to find is not a ground for the reversal of the judgment. (*Krasky* v. *Wollpert,* 134 Cal. 338, 342, [66 Pac. 309].) This, we think, disposes of all the questions suggested by the appellant as to the lack of findings.

Aside from the foregoing conclusions, which we think are of compelling force, respondent calls our attention to the fact that there is nothing in the record affirmatively indicating or showing that the appellant did not waive findings. Therefore, absence of findings is not a fatal defect, and the judgment is supported even in the absence thereof. (*Richardson* v. *City of Eureka,* 110 Cal. 441, 446, [42 Pac. 965]; *Baker* v. *Baker,* 139 Cal. 626, 627, [73 Pac. 469]; *Ladd* v. *Meyers,* 4 Cal. App. 352, 353, [87 Pac. 1110].)

[8] The only logical inferences which may be drawn from the findings, and, as we said before, there is evidence, if accepted by the court, to support them, are that Tower knew that Wilson had the option on the mine, and that Wilson was guilty of no concealment, misrepresentation, or violation of con-

fidence in the matter, and that Tower did not rely absolutely upon Wilson in the matter of the mine deal. Each was, therefore, in a position to form an independent judgment concerning the transaction. The fact that Wilson was Tower's broker in the stock and grain deals did not raise any agency or confidential relation concerning the sale of the mine. In negotiating concerning that property, the two stood on equal terms, and neither owed the other any special duty of a fiduciary nature. (*Hallidie* v. *First Federal Trust Co.,* 177 Cal. 600, 604, [171 Pac. 431].) This being so, it was no breach of faith for him to sell Tower a one-half interest in the mining property, no matter what it may have originally cost, provided, and the court's findings so imply, there was no fraud or deceit in the matter. Wilson, under such circumstances, was not bound to disclose the profit which he was making in the transaction. (*Burbank* v. *Dennis,* 101 Cal. 90, 97, [35 Pac. 444].)

[9] At the conclusion of the trial, the court announced its views as to how the case should be decided, and directed counsel for the defendants to prepare findings. The appellant thereupon sought to amend his third amended complaint by adding thereto a third count, which he styled a "further, separate, and distinct cause of action." The court denied the application for leave to amend. In the proposed amendment it was, in substance, averred that Wilson, owning the Ward option and in possession of the property, induced plaintiff to purchase a one-half interest in the mine, which he represented to be worth over a million dollars, for one hundred and seventy-five thousand dollars, without disclosing the amount Wilson had paid, or would pay, for the property, and for the purpose of making a large profit out of the transaction. There was no error in the ruling. It was within the discretion of the court to refuse to allow the filing of the proposed amendment, presented as it was at the conclusion of the trial. The matter set forth in the proposed amendment was inconsistent with the averments of the original complaint, as finally amended, and with the testimony of the plaintiff given at the trial. Furthermore, it raised new and distinct issues, requiring an answer from the defendant, and which could have been asserted under the first cause of action of the original complaint. The plaintiff was, therefore, not injured. There was no abuse of discretion in refusing plain-

tiff permission to amend as to the matters set forth. (*Williams* v. *Youtz,* 178 Cal. 107, [172 Pac. 383]; *Bowman* v. *Wohlke,* 166 Cal. 121, 128, [Ann. Cas. 1915B, 1011, 135 Pac. 37].)

[10] Appellant's further contention is that the court was not warranted in awarding judgment on Wilson's counterclaim. He asserts that the basis of the claim—Tower's liability as a stockholder in the corporation owning and operating the mine—was not connected with the transaction set forth in the complaint as the foundation of plaintiff's claim, or connected with the subject of the action as required by the first subdivision of section 438 of the Code of Civil Procedure. This provision is to be construed as permitting matters growing out of the same transaction, which may constitute an independent cause of action, to be set up by way of counterclaim.

"Every transaction is more or less complex, consisting of various facts and acts done by the respective parties, and it frequently happens that one or more of these acts would, if viewed by itself, be such a violation of duty as to give to the other a right of action, but the obligation thus created may be so counterbalanced by other matters growing out of the same transaction that no compensation ought to be made therefor. While the parties are carrying their arrangement into execution, and mutual rights and obligations accrue by reason of the failure of either or both of them to comply strictly with its terms, neither party should have the right, so long as the agreement is in force and is in process of execution, to recover the damage sustained by him from any breach of duty by the other, without at the same time satisfying any obligation against himself growing out of the same affair. In such a case the rights of the one are so dependent upon the rights of the other, that simple equity requires that the respective causes of action in behalf of each other should be adjusted in a single suit." (*Story & Isham C. Co.* v. *Story,* 100 Cal. 30, 35, [34 Pac. 671].)

Under the theory of either plaintiff or defendant, the interposition of the counterclaim by the defendant was proper. The money advanced by plaintiff, and by defendant, to carry on the mine was contributed under and as part of the original agreement for the purchase of the property, whatever

that agreement may have been, and which forms the basis of plaintiff's action to recover from defendant. Plaintiff seeks to get back from Wilson, on one theory, part of the purchase price paid for his interest in the mine, and, through another relation to recover an alleged secret profit, both claims being based on an alleged agreement, between the two parties, to acquire the property and to carry it on as a joint venture through the instrumentality of the corporation formed for the purpose. While carrying their agreement into execution, mutual rights and obligations accrued through the advancement by each of them of large sums of money for the use and benefit of the corporation, to which that project was committed. Whether the Oro Rico Mines Company was a mere agency or a naked trustee, charged with carrying out the agreement, as appellant insists, we are unable to perceive how the liability of the stockholders for any indebtedness incurred by it would differ from that legally imposed upon stockholders in ordinary cases. None of the cases cited by appellant indicates that it does. They merely go to the point of holding that, as between the original incorporators, the corporation is a trustee, and the court will dispose of its assets in accordance with the original agreement made between them, they, to that extent, some of the cases holding, being regarded as partners in the concern.

Tower recognized the fact, and proceeded on the theory that the interests of himself and Wilson were represented and measured by the ownership of the stock in the corporation after it was formed. His testimony establishes that very clearly. He testified that when Wilson and he were seeking to adjust their affairs in 1912, it was on the basis of Wilson's "stockholder's proportion of the advances made by me." We feel that it needs no further discussion on our part to demonstrate that the counterclaim was properly entertained by the court.

The judgment is affirmed.

Richards, J., and Kerrigan, J., concurred.

A petition to have the cause heard in the supreme court, after decision in the district court of appeal, was denied by the supreme court on February 17, 1920, and the following opinion then rendered thereon:

THE COURT.—The application for a hearing in this court after decision by the district court of appeal of the first appellate district, division one, is denied.

We desire to say, however, that we do not concur in that portion of the opinion which seems to hold that it may be assumed that findings of fact were waived as to matters claimed to be not covered by the findings of fact actually made and filed. Such an assumption has never been indulged in except in the absence of any purported findings. This portion of the opinion is not in any way essential to a decision.

All the Justices concurred.