[Civ. No. 5471.    Third Appellate District.—February 8, 1936.]

## THE STATE OF CALIFORNIA, Respondent, v. CASTRO ARRATA, Appellant.

Wallace Shephard and Robert C. Fleming for Appellant.

U. S. Webb, Attorney-General, and Albert F. Zangerle and Neal Chalmers, Deputies Attorney-General, for Respondent.

PULLEN, P. J.—The State of California, under an appropriate statute (Stats. 1925, chap. 70, as amended, known as the High Grade Act) brought this action against appellant and others to escheat certain gold bullion.

The complaint alleges that the State of California has held unclaimed for a period of five years 202.10 ounces of gold bullion; that defendants assert some claim thereto but the same is without right, and pray that the bullion be declared to have escheated to the state.

From the evidence it appears that Castro Arrata took this bullion in the form of a bar to the Bank of Italy for the purpose of selling the same. He was informed the bank was not purchasing gold, and he then asked Charles P. Fitzgerald, a special police officer of the bank and a friend of his, to care for this gold. Fitzgerald first attempted to place the same in his safe-deposit box but on account of its size or shape it could not be so deposited, so he put it in his steel locker where it remained for about three weeks. Fitzgerald was then about to go on his annual vacation, and not wanting to leave the gold in the locker, he attempted to return it to Arrata. He could not find Arrata on the night of his departure, however, so he delivered the bar to Joe Schardin, who was also a special officer at another branch of the Bank of Italy a few

blocks away. Schardin agreed to take care of the bullion, and the two men, about 1 o'clock in the morning, went to the bank where Schardin was employed, and concealed the bar under the floor in the basement of the bank. Here the gold remained until found by some of the officers of the bank, who reported the matter to the state department of natural resources, who thereafter took possession under the provisions of section 4b of the High Grade Act, as found in chapter 183, Statutes of 1929. There is some conflict in the record, as but one bar of bullion was placed under the floor by Schardin and Fitzgerald, but when subsequently recovered, two bars were found. It seems, however, although not clearly established, that someone had remelted the gold, changing it from one bar to two smaller bars.

No demand was made on the state by anyone for the possession or return of this bullion, and after it had been held the requisite five years, the state brought the present action to declare the same escheated.

Upon the trial the court found that on or about January 2, 1930, the bullion had been seized by the state, and five years had elapsed since the state came into possession of the gold, and during that time the same remained unclaimed, and that Arrata, the only defendant who appeared in the action, had no right, title or interest in said bar or any part thereof, and entered a judgment escheating the property to the state.

Appellant claims the evidence is insufficient to sustain this finding. It is true that Mr. Arrata testified he purchased the bullion in good faith and claimed to be the owner thereof, and it is also true that the state did not produce anyone who claimed any title or interest therein. It is also the general rule that the uncontradicted testimony of a witness to a fact may not be disregarded, but must be accepted as proof of the fact, but as said in the case of *Quock Ting* v. *United States*, 140 U. S. 417 [11 Sup. Ct. 733, 35 L. Ed. 501], referring to the many exceptions to this general rule, "there may be such an inherent improbability in the statements of a witness as to induce a court or jury to disregard his evidence even in the absence of any direct conflicting testimony". So in this case it was the duty and province of the trial judge to hear the evidence and to give to it such weight and credit as it should be entitled, and an appellate court cannot disturb such a con-

clusion unless it clearly appears that the trial court misconceived the evidence entirely.

We are familiar with the usual instructions given a jury that they are not bound to decide in conformity with the declarations of any number of witnesses which do not produce conviction in their minds, and that a witness wilfully false in one part of his testimony is to be distrusted in others, even to the rejection of all thereof. The same rules apply to a court sitting without a jury. Here the trial judge a jurist of great ability and long years of experience characterized the testimony adduced in behalf of the claimant as disingenious and incredible. Let us examine briefly the testimony in the case.

Arrata testified he purchased the gold in the form of a bar from some man whom he did not know, who said he lived in Jackson. He paid him an amount that he was not able to state accurately but thought it was $4,000, which he paid in cash, taking no receipt or bill of sale therefor, and without having the gold tested or assayed. He took the bullion to the bank and entrusted it to Fitzgerald, who placed it in his private locker, who in turn, without notifying Arrata, gave it to Schardin for safekeeping, and he concealed it under some boards in the basement of another bank, where it remained until uncovered by officers of the bank. It is also to be remembered that the parties were dealing with a commodity having a fixed market value and a very ready sale in well-known establishments.

The witness testified that he never inquired of Fitzgerald where the bullion was after he had delivered it to him, during the interval of several weeks. The witness was unable to give any definite dates when any of these transactions took place, nor was he able to give any adequate description of the man from whom he claimed to have acquired the bullion.

Mr. Fitzgerald testified as to receiving the bullion and placing it in the locker, and delivering it to Schardin for safekeeping. He testified that while he had the gold in his possession Mr. Arrata and two others came to the bank and took the gold to an assay office. Mr. Arrata denied ever having seen the gold after having delivered it to Fitzgerald. Fitzgerald was asked upon cross-examination, the following question:

"Q. Did you ever have a conversation with Mr. Kay just prior to Mr. Kay's arrival there at the bank in which you told him that Castro had some 'hot' gold and wanted to sell it?" To which he answered, "I don't know—I don't think I did." He did admit, however, telling Mr. Kay that Castro had some gold which he wanted to sell. Kay was not a licensed dealer in gold but a musician in a night club in a neighboring community.

It also appeared from the evidence that Schardin had died some five years prior to the date of trial.

Mr. John F. Bongard, an inspector for the state division of mines, testified that he received the two bars of gold from the officials of the bank and at that time attempted to make some investigation in regard thereto. He interviewed Schardin, who first stated that the gold had been given to him by a miner friend of his to hold, but he could not tell where the man was or anything about it. He finally admitted that the gold had been given to him by Mr. Fitzgerald. Upon interviewing Fitzgerald, he at first denied any knowledge of the gold but later admitted that he had received it from Mr. Arrata. When the officers called upon Mr. Arrata at his hotel he at first denied any knowledge of the gold, but after two hours of questioning finally admitted he had bought the gold from a man by the name of Porres in Jackson. The officers then went to Jackson where they interviewed Porres, but Porres denied that he had ever sold any gold to Arrata, and when Arrata confronted Porres he failed to identify him as the man from whom he had purchased the gold. It was on this evidence that the trial judge based his finding that Arrata had no right, title or interest in the said bars of gold bullion, or any part thereof.

It is the contention of appellant that even if Arrata failed to prove ownership he had established some right or interest therein. However, the court was fully justified, on the evidence adduced, in finding as it did.

■ It is true the statute placed upon the claimant the burden of proving ownership or some right or interest therein. The state contends, and we think correctly, that the right or interest referred to is a *pro tanto* interest, such as ownership in common or a valid lien, or in other words, a claim in the ownership or a share in the property itself. The very purpose of the act is to return the bullion to the real

owner and not to one who has acquired a mere possessory title or interest. It is to be recalled also that this is an action by the state in its sovereign capacity which holds a residual title to all property within its boundaries, and a claimant must establish some right in the property superior to that of the state.

Appellant further urges that the court erred in failing to find on the denials of the answer and the material affirmative matter set up therein. These matters were that appellant was a *bona fide* purchaser of the gold, that he had possession of the same prior to seizure, that he had claimed ownership prior to and during the time the same was held by the state, that the gold was not in fact stolen, and that the officers had no reasonable grounds to believe that it had been.

While it is true that the court did not make specific findings in regard to the foregoing issues, the findings as made indicate the holding of the court on the ultimate fact and where it clearly appeared that if the court had made findings, and such findings would have been adverse to the contention of appellant, it is not error to fail to so find. "Its failure to find from the evidence the facts deemed by appellant to be essential to a recovery by him . . . by rendering judgment in favor of defendants, must be regarded as its own conclusion that the evidence was insufficient to justify such findings as would authorize a decision in favor of plaintiff." (*Tower* v. *Wilson,* 45 Cal. App. 123 [188 Pac. 87, 91].)

To the same effect is *Peak* v. *Republic Truck Sales Corp.,* 194 Cal. 782 [230 Pac. 948], where there was a finding, "no sum due, owing or unpaid from plaintiff to defendant", and the court held it was not necessary to find relative to all the specific transactions in the premises. In 24 Cal. Jur. 944, will be found many authorities in support of this principle.

Appellant also contends that section 4b of the act referred to is unconstitutional in that the subject matter of 4b is not embraced within the original title of the act. We believe an examination of the title of the act and the amendment thereto show that appellant cannot be sustained in this contention. The original act is entitled, "An act to provide for the regulation, control and licensing of any person, . . . engaged in the business of . . . purchasing or receiving for sale, . . . silver or gold bullion, nuggets or specimens; to pro-

vide rules and regulations therefor; and to provide penalties for the violation of the provisions of this act.''

The amendment provides, ''To add a new section to said act to be numbered 4b relating to the enforcement thereof and the escheat of ores seized thereunder.'' The amendment is clearly germane to the subject matter referred to in the title.

In view of the record and principles of law applicable to the issues, and the application of the well-recognized rule that this court will be bound by the findings of the trial court, if based upon competent evidence, we are of the opinion that the judgment should be affirmed, and it is so ordered.

Thompson, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 6, 1936.